Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50014 | **DATE** | 12/19/2001 |
| **CASE TITLE** | Mary F. Bell vs. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motions to strike and for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, defendant's motions to strike and for summary judgment are granted. This case is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 20 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| /LC | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

2001 DEC 20 AM 10:44
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

DOCKETED
DEC 2 0 2001

MARY F. BELL,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　v.　　　　　　　　　　　　　　　　) No. 00 C 50014
　　　　　　　　　　　　　　　　　　)
JOHN E. POTTER,[1]　　　　　　　　　)
Postmaster General of the　　　　　)
United States,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　)

### MEMORANDUM OPINION AND ORDER

#### I. INTRODUCTION

Plaintiff, Mary F. Bell, proceeding pro se, has filed a second-amended complaint against defendant, John E. Potter, Postmaster General of the United States ("Postmaster General"). She alleges various instances of discrimination based on her race (African-American), color (black), and sex (female), and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3, 2000e-16 ("Title VII"). Jurisdiction and venue are proper in this district and division. See id. §§ 2000e-16(c), 2000e-5(f)(3). Before the court are the Postmaster General's motion for summary judgment, filed under Rule 56, and his motion to strike Bell's response to the summary

---

[1] John E. Potter has succeeded William Henderson, the original defendant in this case, as Postmaster General, and is, therefore, automatically substituted as the named defendant, pursuant to Federal Rule of Civil Procedure 25(d)(1).

judgment motion as not complying with Local Rule ("LR") 56.1.

## II. ANALYSIS

### A. Motion to Strike

Taking up the latter motion first, the court agrees Bell's response to the Postmaster General's motion for summary judgment should be stricken. First, Bell did not file an accompanying memorandum in support of her response. See N.D. Ill. R. 56.1(b)(2). Second, and more critically, both her response to the Postmaster General's LR 56.1(a) statement of facts and her separate statement of additional facts fail to comply with LR 56.1(b) in numerous respects. To begin with, many of the paragraphs in these statements are filled with improper argument, self-serving and unsupported legal conclusions, and long and rambling narratives rather than particularized statements of facts, most of which are not even responsive to the Postmaster General's facts. In addition, Bell does not offer citations to the record for a good number of her factual assertions. And when she does, the evidence she points to almost invariably does not support the assertion made. At other times, Bell makes it nearly impossible for the court to even verify she has accurately cited the record by referring either to a deposition in general, without providing specific page numbers, or to an exhibit with no way to find it in her 206-page appendix.[2] See Greer v. Board of

---

[2] Although Bell had the right idea to consecutively paginate the exhibits in her appendix, for some reason she rarely

-2-

Educ. of the City of Chicago, Ill., 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes.'") (citation omitted); Brasic v. Heinemann's Inc., 121 F.3d 281, 285 (7th Cir. 1997) (it is not district court's task to "scour the record in search of a genuine issue of triable fact" because court relies on nonmoving party to identify with "reasonable particularity the evidence that precludes summary judgment"; LR 56.1 requires "*specific* references to affidavits and parts of the record, not to entire affidavits") (emphasis in original).

The court recognizes some of these deficiencies could be easily cured and would normally be inclined to give the responsible party a chance to do just that, but not in this case. Not only did the Postmaster General serve Bell with the required notice under LR 56.2, explaining her obligation to comply with LR 56.1, but he also enumerated for her in his motion to strike all of the above problems with her response to the summary judgment motion. Bell filed a response brief to the motion to strike, but rather than specifically rebut the charges made in that motion,

---

ever uses her own appendix page numbers when citing to a particular document. Further compounding these problems is that, according to the Postmaster General, Bell did not even produce some of the materials included in her appendix during discovery.

Bell simply states in summary fashion at the beginning of this brief that she "responded to each of the [Postmaster General's] 185 paragraphs and provided supporting documentation from the record . . . ."  She then proceeds to use the bulk of her brief in response to the motion to strike as an opportunity to respond to the merits of the motion for summary judgment.  Because Bell has already been given one chance to fix her statements of facts, but chose not to, the court will not give her another, especially when she has expressed no willingness to do so.  Cf. Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000) (court did not abuse discretion in refusing to allow plaintiff to use Rule 59(e) motion to "undo" the shortcomings of his LR 56.1(b) statement where plaintiff never sought leave to amend the statement, even after the defendant moved to strike it).

True, Bell is acting pro se, but this in itself is no excuse for not complying with LR 56.1.  See Greer, 267 F.3d 723, 727 (7th Cir. 2001) (where pro se plaintiff's response to motion for summary judgment "miserably failed to comply with Local Rule 56.1," it would be within district court's discretion "to grant the [defendant's] motion for summary judgment on this basis alone"); see also Members v. Paige, 140 F.3d 699, 702 (7th Cir. 1998) (procedural rules "apply to uncounseled litigants and must be enforced").  For the reasons stated above, the court grants the Postmaster General's motion to strike.  Bell's response to

Bell simply states in summary fashion at the beginning of this brief that she "responded to each of the [Postmaster General's] 185 paragraphs and provided supporting documentation from the record . . . ."  She then proceeds to use the bulk of her brief in response to the motion to strike as an opportunity to respond to the merits of the motion for summary judgment.  Because Bell has already been given one chance to fix her statements of facts, but chose not to, the court will not give her another, especially when she has expressed no willingness to do so.  Cf. Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000) (court did not abuse discretion in refusing to allow plaintiff to use Rule 59(e) motion to "undo" the shortcomings of his LR 56.1(b) statement where plaintiff never sought leave to amend the statement, even after the defendant moved to strike it).

True, Bell is acting pro se, but this in itself is no excuse for not complying with LR 56.1.  See Greer, 267 F.3d 723, 727 (7th Cir. 2001) (where pro se plaintiff's response to motion for summary judgment "miserably failed to comply with Local Rule 56.1," it would be within district court's discretion "to grant the [defendant's] motion for summary judgment on this basis alone"); see also Members v. Paige, 140 F.3d 699, 702 (7th Cir. 1998) (procedural rules "apply to uncounseled litigants and must be enforced").  For the reasons stated above, the court grants the Postmaster General's motion to strike.  Bell's response to

the motion for summary judgment is stricken in its entirety, including her response to the Postmaster General's statement of facts, her own statement of material facts, and all exhibits attached thereto.[3] See Bordelon, 233 F.3d at 527-29 (it is within district court's discretion to strictly enforce LR 56.1 and strike entire statement of facts, rather than just offending material).

## B. **Motion for Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Chavez v. Illinois State Police, 251 F.3d 612, 635 (7th Cir. 2001). Where, as here, the nonmoving party's response to the moving party's statement of facts has been stricken because of noncompliance with LR 56.1, the court departs from its usual posture of construing all facts in favor of the nonmoving party; rather, it accepts as true all material facts contained in the moving party's LR 56.1(a) statement. Brasic, 121 F.3d at 284; see also N.D. Ill. R. 56.1(b)(3)(B). As a result, the court accepts as true all material facts in the Postmaster General's LR 56.1(a) statement

---

[3] Nevertheless, the court will still consider Bell's brief in response to the motion to strike, if only to glean her legal arguments.

-5-

of facts that are supported by citations to the record and will not consider Bell's statement of additional facts. See Brasic, 121 F.3d at 284.

Bell has a seventeen-year career with the U.S. Postal Service ("USPS") and, since April 1997, she has worked as a grade level EAS-16 Supervisor of Distribution Operations at the USPS's Processing and Distribution Center in Palatine, Illinois. (LR 56.1(a) ¶¶ 7, 16) Ever since then, for cost of living reasons, Bell has unsuccessfully tried to be placed in a position in the Rockford area, either by way of a "noncompetitive lateral transfer" to a same grade position or a promotion to a higher grade position. In her second amended complaint, Bell claims she was unlawfully denied some thirteen different positions because of her sex, race, and color, and in retaliation for prior complaints and lawsuits she has filed against the Postmaster General.

## 1. **Administrative Exhaustion**

The Postmaster General initially argues it is entitled to summary judgment on the vast majority of these claims because Bell failed to exhaust her administrative remedies on all but two of them. The court has some reservations about this argument. It appears from the documents attached to Bell's second-amended complaint that the USPS's Equal Employment Opportunity ("EEO") Office included in its administrative investigation almost all thirteen positions. Thus, even though Bell mentioned only two

-6-

positions in her formal complaint of discrimination with the USPS's EEO Office, most of the remaining positions not only "reasonably could have developed from [the USPS's] investigation of the charges before it," Cable v. Ivy Tech State College, 200 F.3d 467, 477 (7th Cir. 1999), but they *were in fact* part of its investigation. So the Postmaster General certainly cannot argue he did not have notice of these additional claims. Moreover, to the extent Bell argues she was denied all of these other positions in retaliation for filing her prior complaints of discrimination and previous lawsuit, administrative exhaustion may not even be necessary. See, e.g., McKenzie v. Illinois Dep't of Transp., 92 F.3d 473, 482-83 (7th Cir. 1996); Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989). In any event, the court need not ultimately decide whether Bell should have, or did, exhaust her administrative remedies, as it believes her claims falter on other grounds.

2. **Disparate Treatment**

Because there is no direct evidence of discrimination in this case, the court will analyze Bell's claims that the USPS refused to promote or transfer her because of her race, color, and sex under the familiar McDonnell Douglas burden-shifting method. This requires Bell first to establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position sought; and (4) the

individual promoted or transferred to the position was not better qualified than her. See Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir. 2001). Satisfying these elements shifts the burden to the Postmaster General to articulate a legitimate, nondiscriminatory reason for the adverse employment actions. If he meets this burden, then Bell has the burden to show the stated reason is pretextual. See Curry v. Menard, Inc., 270 F.3d 473, 477 (7th Cir. 2001).

Bell's chief argument focuses on the denial of three requests she made for a "noncompetitive lateral transfer" – a procedure by which a supervisor-level employee at the USPS can transfer to another position at the same pay grade without having to compete against other employees. She made her first two requests together in a letter dated November 13, 1997, seeking a noncompetitive lateral transfer to either of two open EAS-16 positions in Rockford (Supervisor of Distribution Operations and Supervisor of Maintenance Operations). (LR 56.1(a) ¶ 40) The letter was addressed to the Rockford plant manager, Wayne McMahon. (Id.) A few days later, McMahon wrote back to Bell, denying her transfer request and explaining that if she wanted to be considered for the positions, she should apply competitively. (Id. ¶¶ 41, 50) After receiving McMahon's letter, Bell took no further action with respect to these two positions. (Id. ¶ 52)

Jumping ahead to the issue of pretext, see Johnson, 260 F.3d at 732, the Postmaster General's stated reason for not awarding

these two positions to Bell was that she did not apply for them competitively. McMahon testified during his deposition that he requires all applicants to apply competitively for open positions and it is his general policy to not grant noncompetitive lateral transfer requests. (LR 56.1(a) ¶ 43) In fact, he has never agreed to hire laterals on a noncompetitive basis and could not recall ever granting such a request from a supervisor. (Id. ¶¶ 43, 45) Although Bell does not seem to take issue with McMahon's policy of requiring everybody to apply competitively and does not suggest the postal regulations require him to grant a noncompetitive lateral transfer request, she does claim McMahon's explanation is a pretext because she did in fact apply competitively.

A supervisor such as Bell who requests a noncompetitive lateral transfer must submit the first two pages of an application form ("Form 991") and a letter explaining why she wants to be considered noncompetitively. (Id. ¶ 28) To apply competitively, though, an employee must submit the entire Form 991, including statements addressing each "KSA" (knowledge, skill and ability) for the job. (Id. ¶¶ 30-31) When Bell wrote to McMahon on November 13, 1997, she included only the first two pages of her Form 991. (Id. ¶ 40) Thus, while Bell submitted a complete noncompetitive application, she did not submit a complete competitive application. Nevertheless, Bell claims the postal regulations required McMahon to forward her noncompetitive

-9-

application for consideration in the competitive application process. McMahon, on the other hand, testified that he was not aware of any policy requiring him to do so. (Id. ¶ 49)

Although Bell has pointed to some postal regulations setting out how the noncompetitive selection process works, the court has found nothing that would exempt her from submitting a complete competitive application. More importantly, there is absolutely no evidence to contradict McMahon's honestly held belief that he was not required to forward a request for a noncompetitive lateral transfer onto competitive consideration when that request did not include a completed Form 991 and the necessary "KSA"s. See Johnson, 260 F.3d at 733. Had McMahon ever done so in the past, or had Bell included a completed Form 991 and "KSA"s with her request for a noncompetitive lateral transfer, McMahon's failure to forward her request for competitive consideration might have raised some suspicion. But because there is no evidence either of these are the case, Bell cannot establish the stated reason for not awarding her these two positions is a pretext.

Bell made her third request for a noncompetitive lateral transfer on May 12, 1998, when she wrote to Postmaster Ronald Calloway and asked if she could be transferred to Supervisor of Customer Services. (LR 56.1(a) ¶ 131) Calloway replied that there were currently no positions available in Rockford and recommended that she apply competitively should one open up.

(Id. ¶ 132)  Unlike McMahon, Calloway has granted noncompetitive lateral transfer requests in the past.  (Id. ¶ 140)  Initially, though, Calloway denies all such requests and encourages applicants to apply competitively because "laterals are not a guarantee."  (Id. ¶ 141)  On May 27, 1998, the Supervisor of Customer Services position at the Loves Park branch was posted as vacant.  Bell did not apply competitively for the position.  (Id. ¶¶ 127, 128)

Bell first argues the Loves Park position was vacant when she first wrote to Calloway on May 12, 1998, and that Calloway knew it was.  However, Bell has only her unsupported speculation to back up this allegation.  But even assuming Calloway knew the position might be opening up soon when Bell wrote him, this does not change the fact that Bell knew Calloway preferred competitive applications and still did not send him one after the vacancy was officially posted on May 27, 1998.  And, once again, Bell cannot rebut as pretextual Calloway's stated policy of requiring a competitive application before considering a noncompetitive lateral transfer.

Instead, Bell claims the "noncompetitive lateral policy" was applied to her in a discriminatory and retaliatory manner by singling her out and giving white employees their requested lateral transfers but not her.  The problem with this argument is that the two employees she points to as receiving better treatment than her under the noncompetitive lateral policy (and

-11-

that the court can locate in the record) - Phil Dunlap and Diane Hughes - were not similarly situated to Bell. Diane Hughes was temporarily detailed to an EAS-15 position - a lower-grade position than her previous one. (Id. ¶ 78) While detailed to the EAS-15 position, Hughes requested a permanent noncompetitive downgrade, which Calloway subsequently granted. (Id. ¶ 79) Thus, unlike Bell, Hughes was already working in the position she was asking to be downgraded to. Phil Dunlap, it is true, received a noncompetitive lateral transfer from Calloway, but only after Dunlap applied for the position competitively, as Calloway instructed. (Id. ¶ 144). In short, the only evidence before the court indicates Calloway has consistently applied his policy of requiring a competitive application before granting a noncompetitive lateral transfer and did not use it as a pretext to deny Bell her transfer requests because of her race, color, or sex.

For all of the remaining positions, Bell applied competitively but was not selected. In light of the court striking Bell's response to the Postmaster General's motion for summary judgment, however, there is simply no evidence to dispute that the individuals who were selected instead of Bell were better qualified than her and, for that matter, no other evidence indicating Bell was discriminated against. See Brasic, 121 F.3d at 286 (summary judgment properly entered where "the nonmovant has failed to submit a factual statement in the form called for

by the pertinent rule and thereby conceded the movant's version of the facts") (citations and internal quotations omitted).

3. **Retaliation**

Again lacking any direct evidence of a retaliatory intent, Bell is left with the McDonnell Douglas burden-shifting method to prove she was retaliated against for filing her previous administrative complaints and lawsuit. To state a prima facie case of retaliation under Title VII, Bell must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected activity and the adverse action. See Lalvani v. Cook County, Ill., 269 F.3d 785, 790 (7th Cir. 2001). If Bell is able to make out a prima facie case, the Postmaster General must articulate a legitimate business reason for the adverse employment action. If he does so, Bell must then present evidence that the proffered explanation is pretextual. See id.

Based on the record before the court, Bell's claims of retaliation are necessarily limited to those involving plant manager McMahon because he is the only one who had any knowledge of Bell's previous protected activities. (LR 56.1(a) ¶¶ 58-60)[4] Maarouf v. Walker Mfg. Co., 210 F.3d 750, 755 (7th Cir. 2000)

---

[4] Calloway affirmatively testified he did not know of Bell's prior protected activities (LR 56.1(a) ¶ 67) and no mention is made one way or the other as to any other postal officials who might have had some input into selecting or not selecting Bell.

(plaintiff cannot establish causal link between adverse employment action and protected activity if there is no evidence decision-maker was aware of the protected activity). The most arguably recent of these activities was an agreement Bell entered into with the Postmaster General in March 1997 to settle a law suit in which she alleged the Postmaster General had discriminated and retaliated against her, in violation of Title VII. However, Bell's first contact with McMahon after signing the settlement agreement, so far as the court can tell, was when McMahon denied Bell's request for a noncompetitive lateral transfer in November 1997. This temporal gap of approximately eight months is too tenuous by itself to establish the necessary causal link. See, e.g., Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511 (7th Cir. 1998) (five months between protected activity and adverse employment action too long). In the absence of any additional proof of a causal nexus, Bell cannot satisfy the third element of her prima facie case. See id. And even assuming Bell presented sufficient evidence to prove her prima facie case, she has failed, as discussed above, to show McMahon's stated reason for not granting her transfer request - that she did not apply competitively - was merely a pretext.

### III. CONCLUSION

For the reasons stated above, the Postmaster General's motions to strike and for summary judgment are granted. This case is hereby dismissed in its entirety with prejudice.

E N T E R:

_____
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 19, 2001